**Jarvis Charles MOSLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51972.**

Court of Criminal Appeals of Texas.

Oct. 27, 1976.

Opinion on State's Motion for Rehearing Jan. 12, 1977.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty. and Donald H. Flanary, Jr., Kelly W. Loving and Mike E. Keasler, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of aggravated assault. His punishment, enhanced, was assessed at twenty years.

Appellant asserts that the evidence is insufficient to prove that a pistol was used

during the offense as alleged in the indictment. He argues that the State's evidence was insufficient to prove that the weapon used during the commission of the offense was a deadly weapon. See, V.T.C.A. Penal Code Sec. 22.02(a)(3).[1] If the weapon used is not a deadly weapon, a conviction for aggravated assault obtained under V.T.C.A. Penal Code Sec. 22.02(a)(3), cannot be upheld.

The Penal Code defines deadly weapon as:

"(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." V.T.C.A. Penal Code Sec. 1.07(a)(11).

The record reflects that appellant accosted the victim in a parking lot, pointed an unloaded B.B. gun at her, and threatened to kill her if she did not follow his instructions. He then had a change of heart, probably because a policeman was in the vicinity, and discontinued his threats.

■ The evidence establishes that the B.B. gun, an air pistol, was unloaded; that it was never pointed toward the face of the victim; and that appellant never used or threatened to use it as a bludgeon. The State's expert witness testified that the B.B. gun projectile could not penetrate skin, but that there was a good probability it could cause loss of sight if a person were shot in the eye. This witness also stated that the gun was of sufficient mass to cause serious bodily injury if used as a bludgeon.[2]

A witness for the defense stated that the air pistol used by appellant constantly misfired and, when it did fire, the projectile had a very low velocity and rarely went over five feet. The B.B. gun was fired in front of the jury. It misfired on the first attempt. The record does not demonstrate how far or fast the projectile went when the gun did fire.

We must determine whether the air pistol, as used by appellant, is a deadly weapon as defined in V.T.C.A. Penal Code Sec. 1.07(a)(11). Prior to enactment of the new Penal Code, we stated:

"Ordinarily, a gun is a deadly weapon, per se. It may, however, be used in such a manner as to show that it is not such. (citations omitted). A deadly weapon is one which, in the manner used, is calculated to produce death or serious bodily injury. In the instant case, the use of the gun produced neither death nor serious bodily injury. The test, then, is whether, by the manner in which it was used, it was calculated to do either." *Brown v. State,* 155 Tex.Cr.R. 233, 233 S.W.2d 578, 579.

The threshold question before us is whether our past decisions have any weight now that "deadly weapon" has been defined by the Legislature.[3] One commentary to the new Penal Code observes:

"It would appear that prior Texas law provided, *as here,* that an instrument may become a deadly weapon by the manner of its use or capability for use." Branch's Ann.Tex. Penal Statutes, 3rd Ed., Sec. 1.07(11), p. 27. (emphasis added)

■ Our prior opinions on the meaning of "deadly weapon" do and should have instructional significance under the new Pe-

---

1. The State indicted appellant for aggravated assault on the basis that a deadly weapon was used to commit the offense. V.T.C.A. Penal Code Sec. 22.02(a)(3) provides:

"(a) A person commits an offense if he commits assault as defined in Section 22.01 of this code and he:

. . .

"(3) uses a deadly weapon."

2. The pistol was not a deadly weapon as a bludgeon. A pistol is deemed a deadly weapon in this manner only if it is actually used to strike at the victim. See, e.g. *Shadle v. State,* 34 Tex. 572; *Branch v. State,* 35 Tex.Cr.R. 304, 33 S.W. 356; *Hays v. State,* Tex.Cr.App., 480 S.W.2d 635.

3. See our discussion of the relation of prior decisions to the new Penal Code in *Day v. State,* Tex.Cr.App., 534 S.W.2d 681. It should also be noted that the former Penal Code did not define "deadly weapon."

nal Code. This approach is particularly appropriate in light of the fact that the Legislature has apparently codified our prior case law definition of the term.

In the case at bar, the air pistol does not fit the definition provided by the statute. The state's expert testified that an air pistol is not a firearm. Further, it would be unreasonable to conclude, on the basis of the evidence, that the weapon was "designed, made or adapted for the purpose of inflicting death or serious bodily injury." V.T.C.A. Penal Code Sec. 1.07(a)(11)(A).

■ The air pistol, as used, was not calculated to produce death or serious bodily injury. *Brown v. State,* supra; V.T.C.A. Penal Code Sec. 1.07(a)(11)(B). The evidence is insufficient to show that the assault was aggravated by the use of a deadly weapon.

The judgment is reversed and the cause remanded.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

On rehearing the State urges that the court was erroneous in its conclusion that the evidence is insufficient to show that the assault was aggravated by the use of a deadly weapon.

The State notes that V.T.C.A., Penal Code, § 22.02(a)(3), makes an assault an aggravated assault if a "deadly weapon" is used. A deadly weapon is defined in V.T.C.A., Penal Code, § 1.07(a)(11), as "(A) a firearm . . . ." The State argues that the only place in the Penal Code a firearm is defined is in V.T.C.A., Penal Code, § 46.-01(3), which provides that a " 'firearm' means any device designed, made or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. . . ."

The State argues that the device in question was referred to in the court's opinion as "an air pistol" and that the device obviously comes within the definition of a firearm. It appears to be the State's concern that this court in its opinion on original submission has held that an air pistol could never be a deadly weapon.

While the BB pistol was referred to in such opinion as an "air pistol" on several occasions, a careful reading of the opinion shows reference was only to the particular device involved. In holding that the device involved did not constitute a firearm and therefore the evidence was insufficient to show the assault was aggravated by use of a deadly weapon, the opinion did not attempt to exclude all types of air guns or pistols from the definition of a firearm. We do not reach that question in this case.[1]

It is observed that Dr. Vincent DeMaio, an associate medical examiner for Dallas County, testified the pistol involved in the instant case was a spring activated air gun. The arresting police officer, after being read the statutory definition of a firearm, stated the BB pistol was not a firearm, and stated, ". . . it does not have a powdered explosion." A defense witness familiar with the device stated he knew how it worked. The record on direct examination then reflects:

"Q. Is a BB powered by pulling this spring back here?

"A. Right.

"Q. And you put a BB in this hole up here (indicating)?

"A. Right.

"Q. And then you put that back down (indicating)?

"A. Right.

"Q. And you pull the trigger?

"A. Right.

"Q. And it shoots a BB out?

"A. Right."

It does not appear that the spring in this "air" pistol was any more of an explosive device than the string in Robin Hood's bow.

---

1. See and cf. *Tendler v. District of Columbia,* 50 A.2d 263 (D.C.Mun.App.1946); *Schmit v. Guidry,* 204 So.2d 646 (La.App.1967).

Under the circumstances of the instant case, we adhere to our decision on original submission. The State's motion for rehearing is overruled.