EDITH BROWN CLEMENT, Circuit Judge,
joined by JOLLY, HIGGINBOTHAM, JONES, OWEN, ELROD, and HAYNES, Circuit Judges, in full; SOUTHWICK, Circuit Judge, joining in all except for footnote 1; HIGGINSON, Circuit Judge, joining in Part III.B only:
Juan Castillo-Rivera was convicted of illegal reentry under 8 U.S.C. § 1326. He received an 8-level enhancement of his sentence pursuant to U.S.S.G. § 2L1.2(b)(l)(C), for being “previously ... deported ... after conviction for an aggravated felony.” The notes to Section 2L1.2 explain that, “[f]or purposes of subsection (b)(1)(C), ‘aggravated felony’ has the meaning given that term in 8 U.S.C. 1101(a)(43).” That section in turn lists numerous subsets of offenses that qualify as aggravated felonies, including any offense “described in” 18 U.S.C. § 922(g)(1),” which is the federal felon in possession of a firearm statute.
The Probation Office ultimately concluded in its Pre-Sentence Report (“PSR”) that the 8-level enhancement applied because Castillo-Rivera had been previously deported in 2013 after a state court conviction for Unlawful Possession of a Firearm by a Felon in violation of Texas Penal Code (“TPC”) § 46.04. The district court accepted the PSR, and sentenced Castillo-Rivera pursuant to the 8-level enhancement. Castillo-Rivera appeals, arguing that TPC § 46.04 is substantively broader than 18 U.S.C. § 922(g)(1), and is therefore not an “aggravated felony” under the sentencing guidelines. We AFFIRM.
I
Castillo-Rivera was born in Mexico, and came to the United States shortly after his birth. In 2009, he pleaded guilty in Texas state court to Unlawful Possession of Heroin, a state jail felony. Later that year, he again pleaded guilty in Texas state court, this time to Unauthorized Use of a Vehicle, also a state jail felony. In 2013, he pleaded guilty a third time in Texas state court, to Unlawful Possession of a Firearm by a Felon. He was deported to Mexico shortly thereafter. He reentered the United States illegally and was again arrested in Texas in 2014. This last arrest led to the illegal reentry charge and conviction at issue here.
After Castillo-Rivera pleaded guilty to illegal reentry, the Probation Office produced a PSR. The PSR noted that, because “the defendant was deported from the United States subsequent to a conviction for a felony offense, 4 levels are added pursuant to USSG § 2L1.2(b)(l)(D).” The government filed a written objection, arguing that Castillo-Rivera’s conviction for Unlawful Possession of a Firearm by a Felon under TPC § 46.04 was “described in” 18 U.S.C. § 922(g)(1), therefore “constitute[d] an aggravated felony” under 8 *221 U.S.C. § ll01(a)(43), and thus triggered the “8-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(l)(C).” The Probation Office agreed, and issued an addendum modifying the PSR to impose an 8-level enhancement instead of the 4-level enhancement it initially recommended. Castillo-Rivera’s guidelines range increased from 24-30 months to 33-41 months as a result of the larger enhancement. Castillo-Rivera filed a written objection to the addendum. The district court overruled his objection, accepted the PSR with the addendum, and sentenced Castillo-Rivera to 34 months in prison.
Castillo-Rivera appealed his sentence to a panel of this court, arguing that TPC § 46.04 is a nongeneric statute because it is substantively broader than 18 U.S.C. § 922(g)(1), and therefore cannot be considered an aggravated felony for purposes of the sentencing guidelines. The panel concluded that this argument was foreclosed by a previous panel’s holding, explaining that, “[i]n Nieto Hernandez v. Holder, we squarely held that ‘TPC § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)’s definition of ‘aggravated felony’ ” United States v. Castillo-Rivera, 836 F.3d 464, 464 (5th Cir. 2016) (quoting Nieto Hernandez v. Holder, 592 F.3d 681, 686 (5th Cir. 2009)). Because it concluded that it was bound by previous precedent, the panel did not address the merits of Castillo-Rivera’s statutory arguments. We granted rehearing en banc in order to do so.[1]
II
Section 2L1.2(b)(1)(C) of the Sentencing Guidelines states that, when a defendant is convicted of illegal reentry, “[i]f the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for an aggravated felony,” the defendant’s Base Offense Level should “increase by 8 levels.” The commentary on this section explains that “[f]or purposes of subsection (b)(1)(C), ‘aggravated felony’ has the meaning given that term in [8 U.S.C. § 1101(a)(43) ].” U.S.S.G. § 2L1.2 cmt. n.3(A). Section 1101(a)(43) provides a lengthy list of subsets of crimes that qualify as aggravated felonies. One such subset includes any “offense described in ... section 922(g)(1) ... relating to firearms offenses.” 8 U.S.C. 1101(a)(43)(E)(ii). 18 U.S.C. § 922(g)(1), the federal felon-in-possession statute, reads,
[i]t shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition ... which has been shipped or transported in interstate of foreign commerce.
Castillo-Rivera was convicted under TPC § 46.04, which is the Texas felon-in-possession counterpart to 18 U.S.C. § 922(g)(1). The Texas statute reads in relevant part, “[a] person who has been convicted of a felony commits an offense if he possesses a firearm.” Tex. Penal Code Ann. § 46.04(a) (West 2009).
To determine whether Castillo-Rivera’s conviction undér TPC § 46.04 qualifies as an “aggravated felony,” we apply a “categorical approach, under which we refer only to the statutory definition of the crime for which the [defendant] was con *222 victed ... and ask whether that legislatively-defined offense necessarily fits within [8 U.S.C. § 1101(a)(43)’s] definition of an aggravated felony.” Larin-Ulloa v. Gonzales, 462 F.3d 456, 463 (5th Cir. 2006). Here, that means asking whether the offense outlined in TPC § 46.04 is “described in” 18 U.S.C. § 922(g)(1). Castillo-Rivera argues that it is not, because the definitions of “felony” and “firearm” for purposes of the Texas statute are broader than their federal counterparts. We address each of these arguments in turn.
Ill
A. Felony
For purposes of TPC § 46.04, “felony” is defined as any offense that “(1) is designated by a law of this state as a felony; (2) contains all the elements of an offense designated by a law of this state as a felony; or (3) is punishable by confinement for one year or more in a penitentiary.” Tex. Penal Code Ann. § 46.04(f) (West 2009). 18 U.S.C. § 922(g)(1), by contrast, makes the possession of a firearm unlawful for those convicted of “a crime punishable by imprisonment for a term exceeding one year.” Castillo-Rivera argues that the term “felony” as used in TPC § 46.04 is broader — i.e. includes more crimes — than Section 922(g)(1). He contends, for example, that crimes that are punishable for exactly one year are considered felonies for purposes of TPC § 46.04, but not for 18 U.S.C. § 922(g)(1). And, because the text of TPC § 46.04 includes as felonies crimes that would not qualify under its federal counterpart, it cannot be “described in” section 922(g)(1).
But the comparison of generic federal statutes to allegedly nongeneric state counterparts is not an invitation to apply “legal imagination to a state statute’s language.” Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007). A defendant who argues that a state statute is nongeneric cannot simply rest on plausible interpretations of statutory text made in a vacuum. He must also show “a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of the crime.” Id. The Supreme Court has explained that establishing a realistic probability is not an exercise in educated guessing. Rather, “[t]o show [a] realistic probability, an offender, of course, may show that the statute was so applied in his case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.” Id. (emphases added); see also Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 1693, 185 L.Ed.2d 727 (2013) (reiterating that defendants “have to demonstrate that the State actually prosecutes the relevant offense” in a nongeneric manner).
Thus, in order to prevail on his argument that the term “felony” as used in TPC § 46.04 includes crimes that would not be included under 18 U.S.C. § 922(g)(1), Castillo-Rivera cannot simply point to certain crimes that may be included in one but not the other. He must also show that Texas courts have actually applied TPC § 46.04 in this way. He has failed to do so — indeed, he makes no attempt. Instead, he describes numerous crimes that could be considered felonies under the Texas statute but that are not felonies under federal law, even suggesting that “[tjhere are probably too many” such offenses to list in his brief. It is telling that, despite these many evident opportunities, Castillo-Rivera does not point to any case in which Texas courts actually applied TPC § 46.04’s definition of felon to a defendant who could not also be covered by 18 U.S.C. § 922(g)(1).
*223 The dissent maintains that, because the Texas statute’s definition of felon is plainly broader than its federal counterpart, Castillo-Rivera is not required to point to an actual case in which Texas courts applied the Texas statute’s definition of felon to capture those not included under Section 922(g)(1). That position does not comply with the Supreme Court’s directive in Due-nas-Alvarez. There is no exception to the actual case requirement articulated in Duenas-Alvarez where a court concludes a state statute is broader on its face. Indeed, the Court in Duenas-Alvarez emphasized that a defendant must “at least” point to an actual state case — the implication being that even pointing to such a case may not be satisfactory. Duenas-Alvarez, 549 U.S. 18B, 193, 127 S.Ct. 815. In short, without supporting state case law, interpreting a state statute’s text alone is simply not enough to establish the necessary “realistic probability.” Id.
It is worth also noting the practical implications of Castillo-Rivera’s contention. Although it may seem narrow at first glance, Castillo-Rivera’s (and the dissent’s) argument that the Texas felon-in-possession statute is nongeneric is in fact breathtaking in scope. Castillo-Rivera maintains that the Texas statute is broader because it includes within its definition of felony crimes that are punishable for less than a year-and-a-day. But such a ruling would render dozens of states’ felon-in-possession statutes non-generic. Maine’s statute, for example, prohibits possession by anyone convicted of “[a] crime ... that is punishable by imprisonment for a term of one year or more.” Me. Stat. tit. 15 § 393. And in Maine, Unlawful Sexual Touching is punishable by up to a year in county jail. Me. Stat. tit. 17-A § 260. Applying the dissent’s logic, Maine’s statute is non-generic because, on its face, it criminalizes possession of a firearm by someone convicted of a crime that is punishable by less than a year-and-a-day imprisonment. Whether Maine courts actually apply its felon-in-possession statute in such a manner is, for the dissent, irrelevant. Or consider Maryland, which prohibits a person from possessing a firearm if he or she “has been convicted of a disqualifying crime.” Md. Code Ann., Pub. Safety, § 5-133. A “disqualifying crime” includes “a violation classified as a felony.” Md. Code Ann., Pub. Safety, § 5-101. In Maryland, child abduction in certain instances is a felony punishable by up to a year in prison. Md. Code Ann., Family Law, § 9-307. Goodbye Maryland. And what of the many states whose definition of “felony” for purposes of firearm possession includes persons who were convicted under the laws of any state? If Texas’s statute is non-generic, so are all of those as well. So long, Alaska,California, Colorado, Georgia, Illinois, Iowa, Kentucky, Nevada, New Hampshire, New Mexico, and Virginia. Indeed, by our count, 37 states’ felon-in-possession statutes would be at least arguably rendered non-generic if we applied Castillo-Rivera’s logic.[2] It strains credulity to suggest that such a result would reflect Congress’ intent in enacting 18 U.S.C. § 922(g)(1).
Our own precedents are also in agreement that, to successfully argue that a state statute is nongeneric, a defendant must provide actual cases where state courts have applied the statute in that way. The case United States v. CarrascoTercero, 745 F.3d 192 (5th Cir. 2014) is particularly instructive because it has important similarities to our own. Like Castillo-Rivera, Carrasco-Tercero pleaded guilty to illegal reentry. His PSR also recommended an enhancement, in his case because he had been convicted in New *224 Mexico for aggravated assault with a deadly weapon, which was considered a crime of violence pursuant to U.S.S.G. § 2L1.2(b)(l)(A)(ii). Like Castillo-Rivera, he too argued that the state statute was broader on its face than its federal counterpart, and therefore could not be considered a crime of violence for sentencing purposes.[3] A unanimous panel — quoting to Duenas-Alvarez — rejected Carrasco-Tercero’s contention, concluding that his argument from the text of the New Mexico statute was unavailing because he “failed to identify a single case where a New Mexico court ha[d] convicted a defendant ... based on” his proposed interpretation of the statute’s language. Id. at 198.
Carrasco-Tercero is no outlier. In United States v. Teran-Salas, 767 F.3d 453 (5th Cir. 2014), for example, we held that, although the defendant had “describe[d] a theoretical possibility that [a] Texas statute eriminalize[d] conduct that would not qualify” as a generic federal offence, his argument failed nonetheless because he could not establish a “realistic probability” that he or anyone else was prosecuted in Texas under the nongeneric interpretation. Id. at 460. In United States v. Cerón, 775 F.3d 222 (5th Cir. 2014), we again rejected a defendant’s “clever hypothetical” because he made “no showing that [state] courts actually apply the [state] statute to this ... hypothetical conduct.” Id. at 229. In United States v. Hernandez-Galvan, 632 F.3d 192 (5th Cir. 2011) we concluded that, although the state statute in question had language that could be interpreted as criminalizing some acts that its federal generic counterpart would not, the defendant had not “demonstrate[d] that th[e] difference is significant as a practical matter” because he “ha[d] not identified even one [state] case that ... would have been decided differently.” Id. at 200. We have reiterated this point in many other cases. See, e.g., United States v. Sanchez, 667 F.3d 555, 561 (5th Cir. 2012) (defendant had to point to an actual case even though the “literal terms” of the state statute were arguably different from their federal equivalents); United States v. Garcia-Figueroa, 753 F.3d 179, 187 (5th Cir. 2014) (same); United States v. Cordoba-Posos, 295 Fed.Appx. 651, 656-57 (5th Cir. 2008) (a State Senator’s statements to the effect that a state statute swept more broadly than its federal counterpart was “insufficient to show a realistic probability” where defendant could not “produce a single case” in which a state court had actually applied the state law as such); United States v. Lara-Martinez, 836 F.3d 472, 476 (5th Cir. 2016) (defendant did not satisfy the actual case requirement where he pointed to a case applying a different state statutory provision).[4]
Castillo-Rivera has had multiple opportunities to present a case in which a Texas court applied TPC § 46.04’s definition of felon to a defendant who could not have been considered a felon under 18 U.S.C. § 922(g)(1). He did not do so in the court below, he did not before the panel on appeal, and he has not in his briefing or at *225 oral argument before the en banc court. His argument that TPC § 46.04’s definition of felon is broader than Section 922(g)(1) therefore fails.
B. Firearm
For purposes of TPC § 46.04, “firearm” is defined as “any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use.” Tex. Penal Code Ann. § 46.01(3) (West 2009). Federal law defines “firearm” for' purposes of 18 U.S.C. § 922(g)(1) as “(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silences; or (D) any destructive device.” 18 U.S.C. § 921(a)(3). Castillo-Rivera homes in on one supposed distinction between the two definitions: under the Texas definition a firearm expels a projectile by “explosion or burning substance,” while under the federal definition a firearm expels a projective by “explosive.” He argues that, although textually similar, the Texas definition includes an “air gun” — a weapon that expels projectiles using compressed air — while the federal definition does not.
We note at the outset that Castillo-Rivera is correct that an air gun is not a firearm within the federal definition. See, e.g., United, States v. Housholder, 664 Fed.Appx. 720, 723 (10th Cir. 2016) (noting that “an airgun ... is not a firearm”); United States v. Crooker, 608 F.3d 94, 96 (1st Cir. 2010) (holding that the federal definition of firearm “self-evidently does not include an air rifle ... which operates by compressed air”). As above, however, Castillo-Rivera must also establish a realistic probability that Texas would apply its definition of firearm to include an air gun when applying TPC § 46.04 by pointing to an actual case where a Texas court did so. He attempts to satisfy this burden by pointing to two Texas cases. Neither is availing.
The first, Mosley v. State, 545 S.W.2d 144 (Tex. Crim. App. 1976), is easily disposed of. In that case, the defendant was convicted of aggravated assault after pointing an unloaded B.B. gun at his victim in a parking lot and threatening to kill her. Id. at 145. He appealed his conviction, arguing that the B.B. gun was not a “deadly weapon” as required by the Texas aggravated assault statute. Id. In its opinion on Texas’s motion for rehearing, the court wrote, “[i]n holding that the device involved did not constitute a firearm ... the opinion did not attempt to exclude all types of air guns or pistols from the definition of a firearm. We do not reach that question in this case.” Id. at 146 (emphasis added). Indeed, the court reaffirmed its holding that Mosley’s B.B. gun was not a firearm. This case therefore offers no help to Castillo-Rivera.
The second case Castillo-Rivera highlights is admittedly closer to the mark. In Boston v. State, No. 05-96-00832-CR, 1998 WL 19938 (Tex. App. — Dallas Jan. 22, 1998), Boston was convicted for aggravated assault of a peace officer under TPC § 22.02(a)(2) after pointing an air rifle at a law enforcement officer. Boston appealed his conviction and challenged the sufficiency of the evidence, arguing that the air rifle was not a “firearm” as alleged in his indictment. Id. at *1. A firearms expert at Boston’s trial testified that the air rifle qualified as a firearm under the definition in TPC § 46.01 — the same definition at issue in Castillo-Rivera’s case. Id. Explaining that it was bound by the trial court’s crediting the expert’s testimony on the firearm issue, the court in Boston found that the expert’s testimony was “sufficient *226 for the trial court to find beyond a reasonable doubt that the air rifle fell within the definition of ‘firearm’ in chapter 46.” Id. at *2. Castillo-Rivera argues that, because Boston interpreted chapter 46’s definition of “firearm” to include an air rifle, and because Boston could not have been convicted of the crime with which he was charged absent application of that definition, Boston establishes a realistic probability that Texas would apply TPC § 46.04 to include air guns.
We note first that Boston did not hold as a matter of law that the Texas definition of firearm includes air guns. The court made a sufficiency-of-the-evidence determination only, and applied the very deferential standards of review appropriate in such a case. As such, the court “[did] not have the power to re-evaluate the probity” of the firearms expert’s testimony. Id. at *2. Importantly, therefore, the court did not decide if an air gun is a firearm under TPC § 46.01; it only decided that the district court did not err in crediting a given firearms expert’s testimony to that effect.
Perhaps more importantly, Boston was not a felon-in-possession case. Indeed, it had nothing to do with TPC § 46 whatsoever. Boston was charged and convicted under an entirely different chapter of the Texas code — TPC § 22.02(a)(2). The court in Boston highlighted this distinction, writing, “[w]e note initially that appellant was charged with aggravated assault under chapter 22 of the penal code. By its text, the definition of ‘firearm’ in section 46.01 only applies to the weapons offenses enumerated in chapter 46.” Id. (internal citations omitted). The court went on to explain that it was simply using chapter 46’s definition “to assist in the understanding of ‘deadly weapon’ in the context of other offenses.” Id. Thus, the court in Boston did not purport to interpret or apply TPC § 46’s definition of firearm for purposes of chapter 46 itself.
Castillo-Rivera contends that TPC § 46.04 is nongeneric in part because it criminalizes possession of an air gun where its federal counterpart does not. Boston does not establish the necessary realistic probability that Texas courts would apply TPC § 46.04 itself in this nongeneric manner, because Boston did not deal with TPC § 46.04 at all. The Supreme Court has instructed that, to carry his burden, a defendant must point to a case “in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.” Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815 (emphasis added); see also Moncrieffe, 133 S.Ct. at 1693 (defendant must point to a case in which “the State actually prosecute[d] the relevant offense” in a nongeneric fashion) (emphasis added). Boston is not such a case. Castillo-Rivera’s argument regarding the definition of firearm must therefore fail as well.
IV
Because Castillo-Rivera has not established a realistic probability that Texas courts would actually apply TPC § 46.04 more broadly than 18 U.S.C. § 922(g)(1), his argument that TPC § 46.04 is not an aggravated felony for purposes of the sentencing guidelines fails. The 8-level enhancement to his sentence was correctly applied. Judgment is AFFIRMED.

. Upon granting Castillo-Rivera’s petition for rehearing en banc, we requested briefing regarding the proper application of this circuit's rule of orderliness in cases where a party made an explicit concession before a prior panel that is dispositive in a future case. We do not reach this issue here, as it is not necessary to our disposition of Castillo-Rivera’s case on the merits.

. For a list of all of these, see the Appendix attached to this opinion.

. Indeed, Carrasco-Tercero's argument was even stronger than Castillo-Rivera’s, because he pointed to persuasive precedent from a sister circuit explicitly holding that the New Mexico statute's broad language "obstruct[ed] any argument that New Mexico aggravated assault (deadly weapon) qualifies as a crime of violence.” Carrasco-Tercero, 745 F.3d at 197 (quoting United States v. Rede-Mendez, 680 F.3d 552, 558 (6th Cir. 2012)).

. It is worth noting that a number of the dissenters here were in the majority in one or more of the listed cases in our circuit holding that a defendant must point to an actual state case applying a state statute in a nongeneric manner, even where the state statute may be plausibly interpreted as broader on its face.